## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MARIA S.,

                     Claimant,

        v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                 Respondent.

No. 20 C 6727

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Maria S.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits and supplemental security income under Title II and XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 8]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). For the reasons discussed below, Claimant's Memorandum in Support of Summary Reversal or Remand [ECF No. 20] is denied, and the Commissioner's decision is affirmed.

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

## PROCEDURAL HISTORY

Claimant filed a prior claim for disability insurance benefits, which was denied on July 27, 2012. (R.88-100). Claimant then filed new applications for disability insurance benefits and supplemental security income on December 5, 2013, and December 6, 2013, respectively, alleging disability beginning July 24, 2010. (R.18). Those applications were denied initially on April 15, 2015, and on reconsideration on June 2, 2014. (R.18). Claimant requested a hearing before an administrative law judge ("ALJ"). (R.18). A hearing was held in San Antonio, Texas before ALJ Ben Barnett at which Claimant appeared by video. Claimant was represented by an attorney at the hearing. ALJ Barnett issued an unfavorable decision on February 12, 2016, finding that Claimant was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (R.15-31). On January 11, 2017, the Appeals Council declined to review the ALJ's decision so it became the final decision of the Commissioner. (R.1-5).

Claimant then filed a civil action for judicial review in federal court. *See Salazar v. Berryhill*, Case No. 1:17-cv-01546. The parties filed an Agreed Motion for Reversal with Remand for Further Administrative Proceedings, which the district court granted on November 8, 2017. (R.1247-49). Pursuant to that order, the Appeals Council remanded the claim with instructions to the ALJ. (R.1251-56). ALJ Janice Bruning held a new hearing on September 6, 2018, in Oak Brook, Illinois. (R.1179-1213). At the hearing, Claimant amended her alleged onset date to July 28, 2012, the day after her initial claim for benefits was denied. (R.1154, 1182). Claimant was

represented by an attorney at the hearing, and Claimant and Brian Harmon, an impartial vocational expert, testified at the hearing. On November 16, 2018, ALJ Bruning issued a decision denying Claimant's claim for disability insurance benefits and supplemental security income. (R.1151-78).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ found Claimant had not engaged in substantial gainful activity since July 28, 2012, the alleged onset date of her disability. (R.1157). At step two, the ALJ found Claimant had the following severe impairments: bilateral epicondylitis status post bilateral transposition of the ulnar nerve, ventral and hiatal hernias, status post comminuted fracture of the right posterior first rib, hyperlipidemia, and right ankle tenosynovitis. (R.1157). At step three, the ALJ determined Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R.1161). In particular, the ALJ concluded that the severity of Claimant's impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 1.02, 1.00B2b, 1.00B2c, 1.08, 11.4, 5.08, 4.00H(7), 14.09, 14.09A, 14.09B, or 14.0-9C. (R.1161-62).

The ALJ also discussed Claimant's medical history of mental impairments, including depression and anxiety, and concluded that these mental impairments did not cause "more than minimal limitation in claimant's ability to perform basic mental

3

work activities." (R.1159). In her analysis, the ALJ considered the four broad areas of mental functioning set out in the disability regulation for evaluating mental disorders, which are known as the "paragraph B" criteria. Specifically, the ALJ found Claimant had no limitations in understanding, remembering, or applying information and only mild limitation in (1) interacting with others, (2) concentrating, persisting, or maintaining pace, and (3) adapting or managing oneself. With no limitation in one area of functioning and only mild limitation in the other three areas of functioning, the ALJ found that paragraph B criteria were not satisfied, and therefore, Claimant's medically determinable mental impairments were "nonsevere." (R.1160-61).

The ALJ then found Claimant had the residual functional capacity ("RFC")[3] to perform light work as defined by 20- CFR 404.1567(b) and 416.967(b) except that Claimant "should never climb ladders, ropes, or scaffolds, and could no more that occasionally climb ramps and stairs, balance, stoop, frequently to reach in all directions, and her hands no more than frequently to handle, finger, and feel bilaterally." (R.1163). At step four, the ALJ found that Claimant was capable to perform her past work as drafter, hair stylist, cleaner/housekeeper, and receptionist. (R.1169). For all these reasons, the ALJ concluded that Claimant has not been under a disability as defined in the Social Security Act from July 28, 2012 through November 16, 2018, the date the ALJ issued her decision. (R.1169).

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

Claimant submitted a timely statement of exceptions, but the Appeals Council declined to assume jurisdiction by notice dated September 17, 2020, causing ALJ Bruning's decision to constitute the final decision of the Commissioner. (R.1126-32). *See Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Thereafter, Claimant filed this lawsuit seeking judicial review, and this Court has jurisdiction to review this matter. *See* 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

When a claimant files an application for disability insurance benefits and/or supplemental security income, she bears the burden under the Social Security Act to bring forth evidence that proves her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *Bowen v. Yuckert*, 482 U.S. 137, 147-48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005); 20 C.F.R. § 416.920)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the

5

Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether an ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standard in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotations omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek,* 139 S.Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the ALJ's decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the ALJ's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

Claimant argues the ALJ's decision cannot stand because: (1) the ALJ failed to account for all of Claimant's impairments and limitations in the RFC; and (2) the ALJ improperly discounted Claimant's subjective symptoms allegations. The Court will address Claimant's arguments below.

At the outset of the Court's review, however, it is important to note the Court's role in this case is not to determine from scratch whether Claimant is disabled and entitled to disability insurance benefits and supplemental security income. Instead, as set forth above, the law mandates that the Court's review of the ALJ's findings is deferential, and the Court only must determine whether the ALJ applied the correct legal standard and if the ALJ's decision is supported by substantial evidence. *See Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). This Court cannot consider the facts anew or draw its own conclusion. Rather, if substantial evidence supports the ALJ's factual findings, those findings are conclusive, and the Commissioner's decision must be affirmed. 42 U.S.C. § 405(g). Substantial evidence

consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms*, 553 F.3d at 1097 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In making this determination, the Court must review the record as a whole, and it cannot re-weigh the evidence or substitute its judgment for that of the ALJ. *Id.*

### A. The ALJ's RFC Is Supported by Substantial Evidence

Claimant's argues the RFC determination is flawed and incomplete because the ALJ did not adequately account for all of Claimant's limitations, including specifically her hand and arm limitations and her mental limitations. Claimant's Brief [ECF No. 20], at 7-12. The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Madrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). In other words, the RFC is the "most physical and mental work the claimant can do on a sustained basis despite her limitations." *Madrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014), as amended (Aug. 20, 2014) (quotation omitted); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015); SSR 96-8p; 20 C.F.R. § 416.945(a).

Ultimately, "an ALJ need only include limitations [in the RFC] that are supported by the medical record." *Reynolds*, 25 F.4th at 473.

### 1. Hand and Arm Limitations

Claimant argues that the RFC is flawed and incomplete because the ALJ does not account for the numbness, tingling, and weakness Claimant says she suffers in her hands and does not address Claimant's difficulty with repetitive activity in her upper extremities. Claimant's Brief [ECF No. 20], at 8. Claimant asserts three reasons in support of her argument that the ALJ's RFC determination is deficient, including: (1) the ALJ did not explain how or whether the RFC addressed the question of repetitive movements that Dr. Gill raised; (2) the ALJ's limitation to frequent, as opposed to constant, handling, fingering, and feeling does not account for the restriction of no repetitive use of her upper extremities; and (3) the ALJ's decision is deficient because she did not provide any other medical support than the previous ALJ in support of her RFC finding. Claimant's Brief [ECF No. 20], at 9-10. The Court is not persuaded by Claimant's arguments and will address each in turn.

In the RFC, the ALJ limited Claimant to frequent use of her upper extremities to reach in all directions and limited use of her hands to no more than frequently to handle, finger and feel bilaterally. (R.1165). The ALJ explained the record did not support further limitations because the documented radiologic findings of record consistently revealed no more than mild findings in Claimant's upper extremities. (R.1165). Specifically, the ALJ cited to an x-ray that showed no more than mild findings of osteoarthritis of the left acromioclavicular joint with no significant

degenerative joint disease of the glenohumeral joint and no other osseous abnormality (R.1165) (citing R.564). The ALJ also cited an x-ray of Claimant's right shoulder which showed minimal degenerative disease (R.1165, citing R.961). The ALJ further observed that x-rays of Claimant's elbows showed no more than mild bilateral acromioclavicular joint osteoarthritis and that that x-rays of Claimant"s wrists revealed no significant bone or joint abnormality. (R.1165, citing R.793, 849, 1810-11, 1813). The ALJ also considered an electromyography which did not show any evidence of upper extremity mononeuropathy, plexopathy, or right upper extremity plexopathy, or right upper extremity radiculopathy to explain Claimant's symptoms, and she noted that Claimant's laboratory testing was unremarkable, and a neurologist found nothing wrong. (R.1166, citing R.1606, 2223, 2254).

As part of Claimant's application, Dr. Emilo Gonzalez-Ayala performed a physical consultative evaluation of Claimant, and the ALJ found that Dr. Gonzalez-Ayala's opinion was "broadly consistent" with the medical record. (R.1168). Dr. Gonzalez-Ayala concluded Claimant was able to lift, carry, and handle objects no heavier than 20 pounds but that she was prone to drop objects weighing more than five pounds. (R. 1165, 1168, citing R.767-72). The ALJ also noted that, during Dr. Gonzalez-Ayala's examination, Claimant exhibited preserved strength, coordination, and dexterity to both hands and throughout her fingers and that Claimant was able to button her clothes and pick up a pen. (R.769, 1165, 1168). The ALJ considered Dr. Gonzalez-Ayala's report that Claimant's grip strength was preserved but slightly decreased to the left hand, but that Claimant still was able to reach, handle, finger,

and feel (R.1165 and 1168, citing R.769). The ALJ also noted that Claimant exhibited active and passive range of motion of all joints. (R.1165).

Claimant disputes the weight the ALJ gave to Dr. Gonzalez-Ayala's opinion, asserting that it was not inconsistent with difficulty with repetitive work. Claimant's Brief [ECF No. 20], at 8-9. Claimant also points to an August 2010 statement from an internal medicine physician that repetitive use of her arms at work would cause her tendinitis to worsen and result in more pain. *Id.* The Court notes, however, that the ALJ did not find that Claimant could perform repetitive work, but rather limited Claimant to frequent use of her upper extremities to reach in all directions, and her hands to no more than frequently handle, finger and feel bilaterally. (R.1163). Without more, it is not clear to the Court how the August 2010 physician's statement is inconsistent with Dr. Gonzalez-Ayala's opinion and the ALJ's RFC. And the Court will not speculate.

Claimant also complains that the ALJ's limitation to frequent handling, fingering, and feeling does not comport with a restriction of no repetitive use of her upper extremities. Claimant's Brief [ECF No. 20], at 9-10. Claimant, however, acknowledges that "frequent" is defined as occurring from one-third to two-thirds of the workday (*see* Social Security Ruling 83-10), and she does not cite any vocational authority to support her argument that a limitation to frequent use of the upper extremities is not consistent with a restriction of no repetitive use of the upper extremities. In the Court's view, it was reasonable for the ALJ to limit Claimant to frequent use of her upper extremities (which, by definition, occurs between one-third

11

to two-thirds of the workday) and is more limiting than repetitive work. A job that requires frequent use of Claimant's upper extremities would allow for breaks of at least one-third and up to two-thirds of the day and does not equate to repetitive work. Claimant argues without citation to any authority that frequent use of her upper extremities would prevent her from performing her past relevant work as a hair stylist or receptionist (Claimant's Brief [ECF No. 20], at 10), but the vocational expert's testimony supports the ALJ's finding that Claimant still could perform those jobs with limitation to frequent use of her upper extremities. (R.1202-04). And it was reasonable for the ALJ to rely on the testimony from the vocational expert.

In the Court's view, the ALJ thoroughly considered and discussed Claimant's testimony, her treatment history and medical records, and the opinion evidence and sufficiently explained her reasons for finding Claimant was limited to frequent use of her upper extremities. Claimant disagrees with the ALJ's reasoning and the RFC and, in essence, wants this Court to weigh the evidence differently and reach a different conclusion than the ALJ. That, however, is not something the Court can do on this record. *See Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) ("We do not reweigh the evidence or substitute our own judgment for that of the ALJ; if reasonable minds can differ over whether the applicant is disabled, we must uphold the decision under review."); *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002) ("resolution of competing arguments based on the record is for the ALJ, not the court"). In short, it is "an ALJ's job is to weigh conflicting evidence, and the loser in such a process is bound to believe that the finder of fact should have been more favorable to his cause.

The substantial evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record)." *Sanders v. Colvin*, 600 F. App'x. 469, 470 (7th Cir. 2015).

While Claimant would have weighed the evidence differently, for all the reasons discussed above, the Court finds that the ALJ reasonably limited Claimant to frequent use of her upper extremities and accommodated Claimant's hands and arms complaints, and those findings are supported by substantial evidence.

### 2. Mental Limitations

Claimant next argues that the ALJ's analysis of her mental limitations was not logical and the ALJ ignored relevant evidence of how she managed her symptoms. Claimant's Brief [ECF No. 20],a at 11-12. Claimant essentially challenges the ALJ's conclusion that her mental impairments were not severe.

The ALJ specifically considered singly and in combination Claimant's medically determinable mental impairments of depression and anxiety and concluded that they did not cause more than minimal limitation in Claimant's ability to perform mental work activities, and therefore, were "nonsevere." (R.1159). The ALJ discussed paragraph B criteria and concluded that Claimant did not have any limitation in understanding, remembering, or applying information and only had mild limitation in interacting with others, in concentration, persistence, or pace, and in adapting or managing oneself. (R.1160-61).

Other than mentioning that she takes medication for her anxiety and depression, has panic attacks, and that she just lies around if she is depressed (Claimant's Brief [ECF No. 20], at 11), Claimant does not cite to any specific evidence in the record to support her contention that she was further limited in any of the B criteria discussed by the ALJ. The Court also notes that the state agency psychological consultants opined that Claimant did not have any severe mental impairments and had only mild restriction of activities of daily living and mild difficulties in maintaining social functioning and concentration, persistence and pace. (R.1168). The ALJ gave these opinions "great weight" and concluded they were "consistent with the overall evidence of record." (R.1168).

In the Court's view, the ALJ reasonably concluded Claimant's mental impairments were not severe, and the record evidence supports the ALJ's determination Claimant was able to perform a limited range of light work without any mental accommodations needed. *See Betty J. v. Saul*, , 2020 WL 2557348, at *6 (N.D. Ill. May 20, 2020) (affirming the ALJ's decision to not include limitations for non-severe mental impairments in the RFC when there was an absence of evidence and minimal treatment). Claimant may disagree with the ALJ's conclusion, but the "RFC is a legal—and not a medical—decision that is exclusively within the ALJ's authority to make[.]" *Michael B. v. Berryhill,* 2019 WL 2269962, at *6 (N.D. Ill. 2019). Ultimately, the ALJ's analysis of a claimant's RFC "must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). An ALJ is not required to provide a

complete and written evaluation of every piece of testimony and evidence, but she must build a logical bridge from the evidence to her conclusion. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). In the Court's view, the ALJ explained why she did not include any mental limitations in the RFC, created a logical bridge from the evidence to her conclusion, and supported her RFC assessment with substantial evidence. Therefore, remand is not required.

**B. The ALJ Sufficiently Considered Claimant's Subjective Complaints**

Claimant next argues the ALJ improperly discounted Claimant's subjective symptoms allegations. Claimant's Brief [ECF No. 20], at 12-15. Specifically, Claimant identifies three errors in the ALJ's analysis of her subjective symptoms, including: (1) the ALJ's reliance on a note from nurse practitioner that Claimant reported she "went to neurology [and] was told she does not have anything wrong" (R.1166); (2) the ALJ's discussion of normal or mild examination findings regarding Claimant's legs, gait, and shoulders when, according to Claimant, those findings had no bearing on her hand and arm problems; and (3) the ALJ's reliance on Claimant's part-time work as a companion/caregiver for an elderly patient. Claimant's Brief [ECF No. 20], at 12-13. The Court, however, is not persuaded by Claimant's arguments for the reasons set forth below.

An ALJ's evaluation of a claimant's subjective symptom statements and complaints is afforded "special deference" and will be upheld unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); *see also, Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Murphy v. Colvin*, 759 F.3d 811, 816

(7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). The Seventh Circuit has emphasized that the ALJ is in the best position to see and hear the witness and to assess his or her forthrightness. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009).

Social Security Regulation 16-3p outlines a two–step process for an ALJ to follow when evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his or her symptoms. SSR 16-3p, 2017 WL 4790249, *49463; *Wilder*, 22 F.4th at 654. Next, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2017 WL 4790249, *49464; *Wilder*, 22 F.4th at 654. An ALJ must justify her subjective symptom evaluation with "specific reasons supported by the record," *Pepper*, 712 F.3d at 367, and in doing so, must consider several factors, including the objective medical evidence, the claimant's daily activities, the claimant's level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, *7–8 (Oct. 25, 2017).

Here, the ALJ took the factors required by SSR 16-3p into consideration and noted several specific reasons in support of her determination that Claimant's subjective symptoms and complaints were entitled to less weight. Turning first to the

objective evidence, the ALJ reviewed and discussed Claimant's medical history and course of treatment before she concluded that her subjective complaints of disabling limitations were "not entirely consistent" with the medical evidence and treatment Claimant received. (R.1163-69). Based on a detailed review of the medical record, the ALJ concluded that the medical evidence did not fully support Claimants asserted limitations and was not indicative of an individual who could not perform work activities. (R.1163-68). In her analysis, the ALJ found that that the medical evidence did not substantiate Claimant's subjective complaints, explaining that the alleged severity of her mental limitations and her subjective complaints were inconsistent with Claimant's medical history, course of treatment, and the medical evaluations in the record.

Claimant first argues that the ALJ's statement that "a neurologist found nothing wrong" with her after a 2016 evaluation was misleading. Claimant's Brief [ECF No. 20], at 13. In the Court's view, however, it was not error for the ALJ to note that Holley Harris, N.P. reported that Claimant "went to neurology [and] was told she does not have anything wrong." (R.1166, citing R.1606). As contrary evidence, Claimant points to neurology reports from Dr. Gill that she did, in fact, have a neurological issue. Claimant's Brief [ECF No. 20], at 13. But, as Claimant acknowledges, the ALJ also discussed Dr. Gill's examination findings. *Id.* In her analysis, the ALJ addressed both Nurse Harris's note and Dr. Gill's reports and explained how she assessed them. In other words, Nurse Harris's statement is just one piece of evidence among many that the ALJ considered when evaluating

17

Claimant's subjective complaints. (R.1166). The Court cannot say it was reversible error for the ALJ to discuss Nurse Harris's report as it was part of the medical record. More important though, the Court notes the ALJ did not find that Claimant had "nothing wrong," but instead recognized some of Claimant's limitations and accommodated them with an RFC of light work with limitations.

Claimant next faults the ALJ for discussing normal or mild examination findings regarding her legs, gait, and shoulders and argues that these findings had no bearing on her hand, wrist, and elbow problems. Claimant's Brief [ECF No. 20], at 14. Again, the Court finds that it was not error for the ALJ to consider other evidence in the record when explaining her conclusion that Claimant could perform a range of light work. Claimant, however, argues the ALJ erred because she rejected her reports of pain because they were not fully supported by objective evidence. Claimant's Brief [ECF No. 20], at 14. The regulation, however, instructs the ALJ to consider whether allegations are supported by objective medical evidence.[4] In her opinion, the ALJ acknowledged that Claimant complained of chronic pain and difficulty using her upper extremities. (R.1164-65). And contrary to Claimant's argument, a review of the ALJ's opinion shows that she did not reject Claimant's complaints of pain outright. Rather, the ALJ accommodated some of her complaints

---

[4] *See* 20 C.F.R. § 404.1529(a) (However, statements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

by restricting Claimant to a range of light work with additional limitations, but then concluded that the record did not support further limitations as discussed above. (R.1165).

Finally, Claimant criticizes the ALJ for considering her ability to work as a companion/caregiver for an elderly person and argues that the ALJ misrepresented the extent of her duties because Claimant was allowed to rest when she was working. Claimant's Brief [ECF No. 20], at 14-15. In the Court's view, Claimant attempts to minimize her part-time work, but the ALJ reasonably assessed her employment and what it required. Specifically, the ALJ explained that some of the listed duties of Claimant's work as a live-in companion/caregiver were to "provide companionship, friendship, and emotional support" and "talk, listen, share experiences, play games/cards and read to the client" (R.1160, 1163). The ALJ also noted that Claimant was responsible for the safety and welfare of her client, including taking him to/from medical appointments and running errands for him, assisting with plans for visits or outings, writing or typing letters/correspondence, organizing and reading mail, and teaching/performing meal planning and preparation (R. 1160, 1163). Based on these duties and responsibilities, the ALJ found that Claimant was not as significantly limited in physical functioning as she alleged. (R.1162). The ALJ also recognized that, while Claimant denied any physical component to the job at the hearing, the record reflected that she reported it could be physically demanding at times (R.1162, 1163-64, citing R.1494, 1538, 2059, 2085).

Claimant cannot show reversible error simply by suggesting the evidence could support an alternative conclusion. *See Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020) (citing *L.D.R. v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019)) ("[E]ven if reasonable minds could differ on the ALJ's rejection of [the claimant's] testimony, we will not reweigh evidence or substitute our judgment for the ALJ's."). It is the ALJ's job to consider whether the objective medical evidence and/or medical opinions conflicted with Claimant's subjective description of her symptoms. As the Seventh Circuit has emphasized, "[t]here is no presumption of truthfulness for a claimant's subjective complaints; rather, an ALJ should rely on medical opinions based on objective observations and not solely on a claimant's subjective assertions." *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)).

In the Court's view, the ALJ reasonably found Claimant's complaints of disabling pain and fatigue not persuasive. The ALJ found that Claimant's job as companion/caregiver was entirely consistent with her allegations of pain fatigue. The ALJ explicitly acknowledged Claimant's complaints of fatigue but also recognized that, at the same time, Claimant was able to perform her duties as a companion/caregiver. The ALJ noted that Claimant's client depended on her to be alert and responsible for his safety and welfare, which as expressed in her employer's report required the ability to focus, coordinate, and execute several steps. (R.2259).

The Court also notes Claimant's job was not the only factor the ALJ considered when evaluating Claimant's complaints of fatigue. (R.1167). The ALJ also discussed

that Claimant maintained the ability to drive on a regular basis, could travel, and moved out of state during the time period she alleged disability (R.1167). The ALJ also cited several documented examinations when Claimant denied fatigue and appeared as awake, alert, and oriented, and in no acute distress (R.1167, citing R.1832, 1892, 1938). Notwithstanding Claimant's reported complaints of fatigue and pain, the ALJ found that Claimant's activities of daily living suggested an individual who, consistent with the medical evidence and record testimony, is relatively high-functioning and not as disabled as her subjective symptom reports suggest and that Claimant's disabling complaints are not borne out by the record as discussed above. In addition, the ALJ noted that Claimant acknowledged the "efficacy" of her medication in controlling her pain. (R.1165).

In the Court's view and considering the standard of review, Claimant arguments are insufficient to overturn the ALJ's assessment of Claimant's subjective symptoms. The ALJ permissibly considered Claimant's course of her treatment, the longitudinal record, and then-current employment in reaching a conclusion that Claimant was not as limited as she claimed and was able to manage her symptoms, engage in activities of daily living, and maintain part-time employment. Unlike this Court, the ALJ "had the opportunity to observe the claimant testifying, and, as Justice Jackson rightly observed more than a half-century ago, 'a few minutes observation ... in the courtroom is more informing than reams of cold record.' " *Brenda L. v. Saul*, 392 F. Supp. 3d 858, 864 (N.D. Ill. 2019) (quoting *Ashcraft v. State of Tenn.*, 322 U.S. 143, 171 (1944) (Jackson, J., dissenting)). All that is required of the ALJ is

21

that she explain her subjective symptom evaluation "in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (internal quotations omitted). The ALJ did so here, and remand is not required.

## CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, Claimant's Memorandum in Support of Summary Reversal or Remand [ECF No. 20] is denied, and the Commissioner's decision is affirmed in accordance with the Commissioner's request in the last line of its response brief ([ECF 25], at 15).

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge


Dated: October 30, 2023